33 127
44 245

## OLE G. GRINAGER vs. TOWN OF NORWAY.

### January 21, 1885.

Certiorari—Office of Writ.—In this state the writ of *certiorari* is employed strictly as in the nature of a writ of error. Its office is to review and correct the decisions and final determinations of inferior courts and tribunals, and not to divest them of the right of trying and terminating the proceedings before them.

Same—Appeal from Board of Supervisors—Laying Out Cart-Way.— Hence, where an appeal had been taken to a justice of the peace from the determination of a board of supervisors laying out a cart-way, and the jury impanelled to try the appeal disagreed and were discharged, the appeal remained undetermined, and, there being no decision or determination of the matter, a writ of *certiorari* to review the proceedings before the justice was premature.

A petition for the laying out of a cart-way through the land of Grinager, was presented to the board of supervisors of the town of Norway, in Fillmore county, which thereupon gave notice that on November 3, 1883, it would meet, personally examine the proposed way, and determine the matter. On November 8th an order reciting, among other things, the meeting and personal examination on the 3d, and laying out and establishing the cart-way, was made and signed by two of the three supervisors. Grinager appealed to a justice of the peace, and the matter was submitted to a jury, which disagreed.

No further proceedings were had in the appeal. The supervisors in May, 1884, caused a writ of *certiorari* to the justice to be issued from the district court for Fillmore county, and on the return of the writ hearing was had before *Farmer*, J., who ordered judgment, vacating and annulling the appeal and all the proceedings therein, and confirming the action of the supervisors in laying out the cart-way. Judgment was entered, and Grinager appealed.

*H. R. Wells*, for appellant.

*N. P. & W. E. Colburn*, for respondents.

MITCHELL, J.   We are of opinion that the court below acted under a misapprehension as to the office of a writ of *certiorari*.  In England, the courts, in certain cases, allow the writ at any time, not only as a proceeding in error, but also for the purpose of bringing a cause into the superior court for trial.   Under this practice indictments were frequently removed by this writ from the inferior court into the court of king's bench; and when the writ was sustained, the court above would commence the trial *de novo*, having no regard to the place where the cause left off in the inferior court.   1 Tidd's Pr. 412.   But generally, in this country, and certainly in this state, a *certiorari* is employed strictly as in the nature of a writ of error.   The legitimate office of this writ is to review and correct decisions and final determinations of inferior tribunals, not to divest them of the right of terminating the proceedings, nor to withdraw from them the question to be tried.   The district court has no power to issue a writ of *certiorari* to remove into that court proceedings pending and undetermined before an inferior court or tribunal.   The office of the writ is simply to review and correct decisions and determinations already made.   It follows that, before trial and determination, it does not divest the inferior jurisdiction of the right to terminate the proceedings before it. *Lynde* v. *Noble*, 20 John. 80; *Devlin* v. *Platt*, 20 How. Pr. 167; *Haines* v. *Backus*, 4 Wend. 213; *People* v. *Peabody*, 26 Barb. 437. Upon return of the writ the inquiry is whether or not there has been error, and, upon answer to this question, the court above determines whether to affirm or reverse, just as is done in cases of writs of error or of appeals.

It follows that, in this case, the writ was premature.   There had

been no decision or determination of anything before the justice, and hence nothing either to affirm or reverse. Grinager had appealed to the justice from the order of the board of supervisors laying out a cart-way across his land, and assessing his damages therefor. Gen. St. 1878, c. 13, §§ 59, 60. The jury impanelled to try the appeal, and who had been directed to view the proposed cart-way, reported to the justice that they were unable to agree, and had by him been discharged. No other action had been taken; hence the appeal remained wholly undetermined.

While the statute is quite blind, yet we think the only practicable construction of it is that, upon the disagreement and discharge of the jury, it was the duty of the justice to issue a new summons, fixing another time for the hearing of the appeal. If he wrongfully refused to act, he could be compelled to do so by *mandamus*. If he exceeded his jurisdiction, and his acts were judicial in their nature, a writ of prohibition would be the remedy. But neither of these is the office of a *certiorari*.

Certain questions were discussed, which, under the views we have expressed, are not necessary to the decision of this appeal; but, as they have been fully argued by counsel, we deem it advisable to express our views upon them, so as to prevent unnecessary litigation hereafter. The validity of the order of the supervisors laying out the cart-way cannot, in our opinion, be raised or tried on an appeal to a justice of the peace. But the fact that this is stated in the application as one of the grounds of appeal will not invalidate the appeal as to the other grounds.

On an appeal of this kind, as the jury have 10 days within which to make report to the justice, we do not think the statute contemplates a formal continuance of the proceedings to a day certain. The proceedings are not analogous to a civil action before a justice. Hence the failure of the justice to enter a formal continuance did not divest him of his jurisdiction. Neither do we think his delay or neglect to act operates as a discontinuance of the appeal. After the filing of the application for an appeal, the statute makes the justice the actor, and his delay cannot be imputed as *laches* to appellant. Neither, in our opinion, is there anything on the record to show that

the orders of the supervisors are not valid. The orders signed by two supervisors on the 8th of November, appear to be the result of deliberations had at the meeting of the board held on the 3d, pursuant to notice, signed by all three supervisors, fixing that as the day of meeting for hearing the application for laying out this cart-way. The third supervisor, therefore, presumably had opportunity to be present and take part, and if he failed to do so, the other two constituted a quorum. Gen. St. 1878, c. 10, § 66. But, for the reasons already given, the judgment of the court below must be reversed, and the writ quashed.

Ordered accordingly.