STATE ex rel. CHARLES G. WICKSTROM and Others v. BOARD OF COUNTY COMMISSIONERS OF ISANTI COUNTY.[1]

May 11, 1906.

Nos. 14,712—(58).

**Petition for Writ of Certiorari.**

Where there is no especial occasion for the application of strict technical rules to statements in a petition·for certiorari and in the writ issued, and where no prejudice has resulted from informalities, the writ will be liberally construed, and not held to the standard of definiteness and precision of formal pleadings in actions at law and suits in equity.

**Right to Writ.**

The test of the right to certiorari, so far as parties are concerned, is whether the person seeking the writ was a party in form or in substance, so as to be concluded by the determination of the matters in controversy.

**Appearance of Parties in Interest.**

In this case it is *held* that the relators were not parties in form, but were parties in substance, and as such were entitled to appear before and to be heard by the board of county commissioners in proceedings to

[1]Reported in 107 N. W. 730.

lay out a county ditch under chapter 258, p. 413, Laws 1901, and acts amendatory thereto.

**Construction of Statute.**

In accordance with the adjudicated duty of courts of this state to construe these laws so as to reasonably effectuate their beneficial purposes, their indefinite provisions with respect to parties entitled to be heard should be liberally interpreted, so as to enable the board to justly determine the ultimate advantage to the public of the proposed ditch and to more accurately estimate its probable aggregate cost, including damages.

**Right to Appear at Hearing.**

The right of landowners affected to appear before the board and to be heard by it is not confined to those who are strictly parties in the ditch proceedings, but extends to landowners with a well-grounded claim for damage resulting from its construction, although it may not certainly appear that such damages are recoverable at law.

Writ of certiorari issued from the district court for Isanti county, upon relation of Charles G. Wickstrom and others, to review an order of the board of county commissioners of that county, establishing a drainage ditch pursuant to chapter 258, Laws 1901, as amended. From an order, Kingsley, J., granting a motion to dismiss the writ, relators appealed. Reversed.

*James C. Tarbox,* for appellants.

*P. H. Stolberg* and *Godfrey G. Goodwin,* County Attorney, for respondent.

JAGGARD, J.

This is an appeal from an order vacating and dismissing the writ of certiorari herein. On February 14, 1905, the board of county commissioners of Isanti county, Minnesota, made its order professing to establish a certain ditch in said county under the provisions of chapter 258, p. 413, Laws 1901, and the amendments thereto. On March 2, 1905, the relators and appellants presented to the judge of the district court of said county their relation for a writ of certiorari. He made a peremptory order that such writ issue. This order was filed, and the writ was issued and served, and due return made. On May 14, 1905, on call of the calendar, the petitioners for the ditch were

permitted by the court to join with the county board in opposition to the writ. Both petitioners for the ditch and the county board then moved to vacate and discharge the writ. The particular points made on this motion were: First, that the petition for the writ does not show that relators will sustain any legal damage or injury in consequence of the construction of the ditch; second, that they were not parties to the ditch proceedings either in form or substance, and therefore had no right to prosecute the writ. It was conceded that

> The ditch (would) not cross any land owned by them; (would) not drain any of their land; none of them (were) assessed for benefits, nor awarded damages; nor (were) they named anywhere in the proceedings, except a remonstrance was filed, which was joined in by the relators and others, against the laying of the ditch.

1. The allegations of the amended writ in reference to damages or injuries by reason of the ditch to the relators is as follows:

> That said lands lie along the course of drainage of waters from Lake St. Francis, so called, in said township and range, and that any waters that are discharged into said Lake St. Francis, more than will naturally be discharged therein, will, in the natural course of the drainage from said lake, flow upon and over said lands; that said lands are already greatly damaged, and rendered of less value than they would otherwise be, by reason of the waters that flow naturally from said lake upon said lands; that the ditch hereinafter described and referred to will, if dug and constructed, collect into itself the waters from a large tract of land lying in said township, and also in township 35, range 25, in said county, and other lands in that vicinity, and discharge them into said Lake St. Francis, which is the outlet of said ditch, from which lake said waters will flow on and over said lands of your relators, damaging and lessening the value thereof to the amount of many thousand dollars, to wit, $10,000; that the natural drainage of said water is not to or on said land and the water which will be discharged through said ditch would not,

nor any of it, be discharged upon said land but for said ditch, but would be discharged in a totally different direction into the Rum river, and thus flow off without damage to any one.

It is true that the amendment was to the writ, and not also to the petition. No prejudice in any form has followed from this omission. In this case there is no occasion for the application of strict technical rules. Accordingly the sufficiency of the claim of injury will be regarded upon its merits. The amended allegations might not be sufficient in a formal complaint in an action to try the question of damages; but it is not necessary, as against the present motion, which is in effect a general demurrer, that this preliminary claim should have the definiteness or certainty of a formal pleading.

2. The principal question in this case is whether the appellants were proper relators. No question is raised on this record as to the inability of the appellants to maintain other proceedings because they might have appealed. All parties are agreed to the rule of law, which is well stated ·n 6 Cyc. 766, as follows: "The test of the right to certiorari is whether the person seeking the writ was a party in form or substance, so as to be concluded by the determination below; and it will not, in general, issue in behalf of a stranger to the proceedings below or of one who was not a party thereto." The relators here were not parties in form. The question then is whether they were parties in substance. We are of opinion that they were.

The act providing for county drainage of land prescribes a number of preliminary proceedings which are tentative in character, and not precise nor definite as to necessary and proper persons participating therein and affected thereby. The petition may be signed by one or more of the landowners whose lands will be "liable to be affected" by the proposed assessment. Copies of petition and notice of its filing are mailed to all nonresident owners whose lands lie within two miles of routes whose addresses are known or ascertainable. The survey consists largely of estimates of cost, course, character, or work, and of lands and owners affected. The viewers make further estimates, including "the estimated number of acres in each of said tracts of land to be benefited or damaged (as the case may be), and the amount

that each tract of land will be benefited or damaged by the construction of said work." Upon these and other preliminary proceedings a special meeting of the board of county commissioners is called, of which notice is given "to all persons interested." At the time set for the hearing of the petition and report, the statute requires that the board shall "proceed to hear and consider the same; and all persons interested may appear and be heard by and before them." In case the viewers' report is found to be defective or erroneous in any particular, the board may remedy the defect by re-reference to the viewers, if necessary, or otherwise.

The act is imperfect and incomplete in itself. It is the adjudged duty of the courts of this state to construe it so as to reasonably effectuate the legislative intention and so as to execute its beneficial purposes. State v. Board of Co. Commrs. of Polk County, 87 Minn. 325, 92 N. W. 216, 60 L. R. A. 161. There is nothing in the reason of the law or in its terms which necessarily restricts the right of appearing before the board of commissioners, and of being heard by them, to the owners whose lands the ditch crosses or drains, or to the persons who have been, in a preliminary way, assessed for benefits, or awarded damages, or expressly named in the proceedings. A liberal interpretation of the law with reference to "persons likely to be affected" and to "persons interested" who are entitled to appear before and to be heard by the board of county commissioners at the preliminary hearing is reasonable in itself and will conduce to the protection of public organizations and officials and of the public itself. Persons not in form parties, like those whose claim is, as here, that their lands will be made into a lake by the overflow, naturally would insist that the public could not, by ditch proceedings or otherwise, take for its use private property without just compensation first paid or secured. Const. art. 1, § 13. If it should be held that such persons did not suffer merely damnum absque injuria, but had a right to recover damages, the county or its officials would be sought to be held responsible. It might thus result that the lands of private individuals would be drained at public expense, although the intent and purpose of the act was to assess the cost, including damages, upon the lands benefited by the drain, and not to impose the cost upon the county generally.

The principal reason assigned by the respondents and by the trial court for holding the relators not to be parties in substance to the original proceedings is that cases of this kind, and this case, are governed by the doctrine laid down in Sheehan v. Flynn, 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632, and Oftelie v. Town of Hammond, 78 Minn. 275, 80 N. W. 1123, and similar cases, and that under that doctrine the relators affirmatively appear to have suffered only damages for which there could be no legal recovery. The right of the owner of one tract of land, without negligence and in accordance with reasonable necessity, to improve his own lands by drainage, even though in so doing he necessarily casts additional water upon lower lands, without responsibility for consequent damages, has been recognized in this court. No good reason suggests itself for extending that doctrine to cases of county ditches, in which the public may undertake to drain large tracts of land belonging to many proprietors, not exclusively of surface waters, and to divert the resulting waters and cast them in large and injurious quantities upon the lands of others.

A further doubt also arises whether the county or its officers could be held responsible in damages for work done for the public good in its governmental capacity under the police power or power of eminent domain (Lien v. Board of Co. Commrs. of Norman County, 80 Minn. 58, 82 N. W. 1094), and whether such damages be not merely incidental to authorized act. In many cases further questions are likely to arise upon particular facts, as those raised here because of the distance of relators' premises from the drain and the intervention between the drain and the premises claimed to be damaged of a public watercourse. We are not, however, called upon in this case to decide, nor do we decide, what the rights of persons so damaged by such overflow would be. Even if, however, no legal injury would certainly result for which the county or its officers could be held pecuniarily responsible, the board of commissioners, in determining the expediency of the contemplated work, should consider its ultimate advantages and disadvantages, and to that end should weigh all reasonably probable damages, including such as might not be clearly recoverable in law. It would be the more unjust to improve the lands of some owners at the expense of considerable damage to others because the latter would be remediless. See Reasoner v. Creek, 101 Ind. 482.

These considerations are reinforced by the fact that as to such lands not referred to in the proceedings, but which would reasonably appear to suffer harm because of the ditch, the question of liability of the county or its officers for damage, and the fact, extent, and circumstances of damage, could be determined in advance of actual expense only with difficulty and with uncertainty. It is evident that it is of moment to public authorities and just to all landowners, as well to those who receive benefits for which they must pay as to those to whom only damages and no benefits will result, that before final expenses are incurred and paid, and the question as to civil responsibility created, a full and fair hearing be had concerning all reasonable or prejudicial effects of the proposed ditch. "A plaintiff in certiorari cannot ask the court to relieve him unless it appears that the proceeding may, at least, damage him." Campbell, C. J., in Davison v. Otis, 24 Mich. 23, 24. But, if he does so show, that is sufficient to make him a proper party. In Reasoner v. Creek, supra, under a similar, but not identical, statute, it was held that a property owner whose land will be injured by the construction of a ditch has a right to appear and remonstrate, although no damages were assessed in his favor, and although no benefits were assessed against his land.

It follows that the relators were entitled to review the proceedings in case they sufficiently shall show that they will be substantially and proximately damaged thereby. If they establish, on hearing of the writ, their allegations as to damages, they will be entitled to be heard on the jurisdictional defects in the proceedings which they set forth. If they fail in such proof, they will not be so entitled.

Order reversed.