G. W. BILSBORROW and Others v. FRANK L. PIERCE and Others.[1]

June 7, 1907.

Nos. 15,222—(145).

**Drain—Objecting Landowners.**

Certain landowners, who were not served with notice nor named in drainage proceedings, and whose lands were not referred to therein, remonstrated against the proposed ditch on the ground that thereby water would be brought in damaging quantities upon their premises. It is *held* that they were not restricted to an appeal from the determination of the board to proceed with the construction of the ditch.

**Same—Injunction—Certiorari.**

Nor were they compelled to resort to certiorari as the only alternative remedy. Certiorari does not permit an investigation into matters outside the record, or their consideration, and does not enable the court to give a full and complete hearing to all persons interested, and then, by proper mandate, to carry its findings into effect. The appropriate remedy for the attainment of these objects is injunction.

**Complaint.**

The complaint in this case is *held* to have sufficiently alleged irreparable damages, and to have justified the trial court in granting a temporary injunction.

Action in the district court for Wilkin county to restrain defendants, county commissioners and county auditor of that county, from constructing a certain public ditch. A motion to vacate the temporary restraining order and to dismiss the action was heard before Flaherty, J., who denied the motion and granted a temporary injunction. From an order denying defendants' motion and the order granting a temporary injunction, defendants appealed. Affirmed.

*Edward Balentine, Purcell & Divet,* and *Lewis E. Jones,* for appellants.

*Nye & Dosland* and *Henry G. Wyvell,* for respondents.

JAGGARD, J.

The plaintiffs and respondents owned lands in Wilkin and Clay counties. The appellants and defendants, as the county commissioners

[1]Reported in 112 N. W. 274.

and the auditor of Wilkin county, instituted proceedings under chapter 230, p. 303, Laws 1905, for draining certain lands. The complaint alleged that the lands of the plaintiffs would be seriously and permanently damaged by the discharge of water thereon by means of the proposed ditch, and that other outlets suggested would furnish better drainage at no greater expense. None of the plaintiffs were named anywhere in the proceedings, nor were their lands described therein. None of them were assessed for benefits, nor awarded damages. They had, previously to commencing this action, filed a remonstrance against the establishment of the drain as proposed, on the ground that its construction would result in irreparable injury to their lands. The court granted a temporary injunction. The defendants moved for an order dismissing the action. From an order denying the motion, and from the order granting a temporary injunction, this appeal was taken.

The first question presented by the record is whether the plaintiffs lost whatever rights they might have had by neglecting to appeal from the assessments of benefits and damages made by the drainage commissioners. We think they did not. It is elementary that the board of county commissioners could not have proceeded against lands until they had acquired jurisdiction, and they could then proceed against only such lands as had been brought within the power of the court by personal service of notice upon their owners, or by notice sufficient in ordinary proceedings in rem, in accordance with the statute. In the instant case, there had been no personal service on the owners. Their lands had not been named in the proceedings. Neither plaintiffs nor their property had been brought within the jurisdiction of the county commissioners. It may be that under such circumstances, if the plaintiffs had seen fit so to do, they might have appeared before the board of county commissioners and might have been entitled to be heard by them. State v. Board of Co. Commrs. of Isanti County, 98 Minn. 89, 107 N. W. 730. The plaintiffs in this case did not see fit so to do. Instead, they elected to bring an action to enjoin the township authorities. If they had the right to do this, they were clearly not estopped by failure to appeal. Nor did the fact that they filed a remonstrance make them parties to the proceedings.

In Johnson v. Town of Clontarf, 98 Minn. 281, 108 N. W. 521, the plaintiff, whose land was taken, or attempted to be taken, in highway

proceedings, had filed a claim for damages, but subsequently made an effort to withdraw it. The commissioners allowed the claim in part only. Plaintiff appealed from the award. That appeal was pending when he commenced his action to have the entire proceeding enjoined. It was held that, inasmuch as the commissioners had acquired no jurisdiction, he was not estopped by his conduct with reference to the appeal from proceeding in equity. By parity of reasoning it follows that the plaintiffs here were not precluded by their previous conduct from applying for an injunction.

The second question presented by the record is whether the respondents should have resorted, not to injunction, but to certiorari. Counsel for defendants urge with much earnestness considerations of public policy as a basis for denial of the relief here sought. "The matter of drainage in the Red River Valley is becoming acute. It is a serious matter from the standpoint of the public, and one or two men should not be permitted by injunction to interfere with an undertaking of the kind proposed by appellants on so shadowy a showing as that made by the respondents."

The importance of enforcing legal means of securing the drainage of the wet lands of this state has been fully and repeatedly recognized by this court. A rational solution of the difficult questions thus presented must be based upon a just determination of resulting benefits and damages, and must seek to avoid the confiscation of land through drainage assessments analogous to that which has resulted from the current system of local improvement assessments in cities. It may be that, under existing legislation, great evils as the result of the enforcement of the drainage laws are inevitable, and that the courts are powerless, if, indeed, under any circumstances, they would have the prescience, to avoid the sequence of material and lamentable wrongs attendant upon the construction of ditches. This is, however, only so much more reason why they should not hasten to the solution of such intricate problems upon intellectual stilts. On the contrary, it is of the utmost importance that, before costs and expenses are incurred, questions of benefits and damages should be fully considered, and their extent definitely contemplated in advance of the completion of the actual work. See State v. Board of Co. Commrs. of Isanti County, supra. It is a safe

rule for drainage authorities to be sure they are right and then to go ahead. The very A B C of being right is to get jurisdiction of the parties or the lands involved, and to secure to those likely to be "injuriously affected" their day in court. Unless that opportunity be afforded at some stage, indeed, the subsequent proceedings would be of little legal import. See authorities collected in Stone v. Little Yellow Drainage District, 118 Wis. 388, 399, 95 N. W. 405. It follows that full opportunity should be given to the present objectors to have their rights judicially determined.

The plaintiffs were parties in substance, so that they might have attacked the jurisdiction of the county commissioners by certiorari. State v. Board of Co. Commrs. of Isanti County, supra. Certiorari is not, however, an adequate remedy. It is elementary that such a writ reviews only the legal aspect of facts appearing in the record. It does not permit an investigation into matters outside of the record, or their consideration. Nor does it enable the court to give a full and complete hearing to all parties interested, and then by a proper mandate to carry its findings into effect. 6 Cyc. 840; Minnesota Sugar Co. v. Iverson, 91 Minn. 30, 34, 97 N. W. 454; Collier v. Board (Mich.) 111 N. W. 340; Elliott, Minn. Pr. §§ 271, 272. It is not the appropriate remedy to prevent anticipated wrong or injury, 6 Cyc. 761. Proceedings in injunction are the natural means for ascertaining the relevant facts in such cases, for determining the relief to which the parties are entitled, and for enforcing that relief in fact.

Their distinctive propriety under such circumstances as those at bar was pointed out in Fraser v. Mulany, 129 Wis. 377, 109 N. W. 139. That case involved the cutting of a ditch by the supervisors of a town, in proceedings for the establishment of a drain under the statutes, through the premises of an individual. It was held that this was a taking of property forbidden by the constitution, unless compensation was made, save in a case where a nuisance exists on the identical premises. Dodge, J., said: "Certiorari is not an adequate remedy, for that is a discretionary writ, which the court may refuse on the ground that the subject can be better litigated in other proceedings; * * * and, further, facts de hors the record, of which there are many alleged, affecting the validity of the proceedings, as already appears, could not be availed of upon certiorari. The applicability of a suit in equity to de-

clare void the proceedings and enjoin further steps, where as here the proceedings constitute a cloud on the title of the property owner, or a threatened permanent injury to his land, has often been declared in this state."

It is true that, in many drainage cases similar to the case at bar, applications for injunction have been denied. The authorities, however, to which defendants refer us, and which we have been able to find, do not sustain the position that plaintiffs' only relief here was certiorari or appeal. In Schumacher v. Board of Co. Commrs. of Wright County, 97 Minn. 74, 105 N. W. 1125, all the petitioners whose applications for injunction were refused were named in the auditor's notice. They had their remedy at law by asserting the defense in proceedings to collect, by appeal under the drainage statute, or by certiorari.

In the case at bar, as has been pointed out, the plaintiffs were in no wise made parties to the proceedings. In Stone v. Little Yellow Drainage District, supra, an injunction was refused because, inter alia, plaintiff had been served with notice in accordance with statutory requirements. Jurisdiction over him was complete. This was substantially true also in State v. Fisk (S. D.) 107 N. W. 191, 192. In Alstad v. Sim (N. D.) 109 N. W. 66, an injunction to restrain assessments against land after the ditch had been completed was refused, inter alia, on the ground of the laches of the parties applying for it. No such question is raised here. Township v. Brown, 130 Mich. 382, 90 N. W. 38, to which defendants refer us, does not aid their contention. After pointing out that the complainant had not alleged in his bill nor shown by his testimony that his land is injured by the construction of the drain, the court proceeds: "He is therefore not entitled to maintain this suit. All of the cases cited by the complainants in support of their contention are cases in which drain commissioners have flooded lower lands by draining upon them an unusual flood of water from the higher lands to the injury of the lower estate. Authorities are uniform that this cannot be done under the authority of the drain commissioner without compensation."

The final question is whether the complaint shows that the plaintiffs have shown sufficient injury to entitle them to the relief sought. We are of the opinion that for present purposes the complaint should be treated as entitling the plaintiffs to litigate the threatened harm, and

that they should not be compelled to wait until the ditch is constructed and then sue for damages. Reasons of public policy, upon which this conclusion is in part based, have been previously referred to. There undoubtedly are cases in which the petitioner for an injunction may show that his property may be damaged by threatened conduct of which he complains, and in which he is left to his action for damages. This court has recently applied that principle to damages to plaintiff's property fronting on a street, caused by the vacation of the street by the city, where no property was actually taken and the damages were consequential and peculiar to the plaintiff. Vanderburgh v. City of Minneapolis, 93 Minn. 81, 100 N. W. 668. The court there held that it was not a condition precedent to the right of the city to vacate streets that such damages should be first ascertained and paid.

In the case at bar, however, the threatened damages are of an essentially different character. They will be the direct result of the flooding of plaintiffs' land. It would be improper, on a preliminary hearing of the kind before us, to determine in advance if such damages would be recoverable. State v. Board of Co. Commrs. of Isanti County, supra. Plaintiffs are entitled to be judicially heard on that subject. Their rights should be determined on formal trial. For present purposes, and for present purposes only, it is held that the complaint sets forth that plaintiffs' property would be directly injured by inundations caused by the proposed ditch, and that some part of their property would be "taken * * * without just compensation therefor first paid or secured," and contrary to section 13 of article 1 of the constitution of Minnesota.

It is also objected that the damages, in any view of the case, are not shown to be irreparable, and that there appears to be only a mere possibility or chance that injury may follow. The relaxation of the rule requiring a prima facie case of irreparable damage as a condition of granting an injunction in such a case as this, and a modification of the enforced standard of such damage obvious in such decisions generally, has been expressly recognized by this court. Whittaker v. Stangvick 100 Minn. 386, 111 N. W. 295, 297; Fuller v. Schutz, 88 Minn. 372, 93 N. W. 118; Stees v. Kranz, 32 Minn. 313, 20 N. W. 241. Within the present rule on the subject we are satisfied that the complaint sets

forth threatened damage of such a character as to entitle the plaintiffs
to a temporary restraining order until the merits of the case can be
fully heard and determined.

Affirmed.